UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| SERENA P. BURKARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:14-cv-00515-TWP-DML |
| ) | |
| FINNER N FINNER, LLC, ) | |
| ) | |
| Defendant. ) | |

**ENTRY ON MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed pursuant to Federal Rule of Civil Procedure 56 by Defendant Finner N Finner, LLC ("Finner") (Filing No. 44). Plaintiff Serena Burkard ("Burkard"), an "in-store employee" for Finner at one of its Jimmy John's sandwich shops, initiated this lawsuit alleging discrimination and retaliation based on her sex and pregnancy after she was terminated. Finner moved for summary judgment on the bases that Burkard cannot establish a *prima facie* case for her claims and that it had a legitimate, non-discriminatory reason for terminating her. For the following reasons, the Court **GRANTS** in part and **DENIES** in part Finner's Motion for Summary Judgment.

## I.     BACKGROUND

The following material facts are not necessarily objectively true; but, as required by Federal Rule of Civil Procedure 56, both the undisputed and disputed facts are presented in the light most favorable to Burkard as the non-moving party. *See Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

Finner owns and operates numerous Jimmy John's sandwich shops in the Indianapolis area, including the restaurant located at 1437 East 86th Street in Indianapolis, Indiana. Burkard was

hired as an "in-store employee" to work at this location on May 12, 2013, and she continued working there until her employment was terminated seven months later on December 16, 2013. "In-store employees" performed various duties as sandwich makers, cashiers, stockers, and cleaners. Finner also employed "drivers" who delivered sandwiches but also occasionally performed in-store duties. Burkard was supervised by the person-in-charge/shift manager Ana Anzorena ("Anzorena"), the store manager Michael O'Rourke ("O'Rourke"), and the area manager Ronald Strainis ("Strainis").

At the time that she was hired, Burkard received a copy of Finner's employee handbook, which provided information about the policies and procedures for working at Jimmy John's. The employee handbook included Finner's equal employment and non-discrimination policies and its attendance and punctuality policies. The handbook explained that when an employee was unable to report to work or arrive on time, the employee must notify the supervisor before the employee's start time. The handbook also noted that unauthorized or excessive absences or tardiness and the failure to inform a supervisor could result in disciplinary action, including termination. Burkard signed an acknowledgement of receipt and understanding of the handbook at the start of her employment.

She was also given a copy of Finner's new hire paperwork. This paperwork explained that all employees must adhere to the Jimmy John's dress code, which included a provision that a black or white long sleeve t-shirt could be worn under a Jimmy John's shirt during cold weather. Burkard was informed of this dress code orally by O'Rourke and in the new hire paperwork. She confirmed in writing that she read and agreed to follow the dress code.

When they were hired or soon thereafter, Finner employees were informed that they were responsible for finding a substitute to work shifts for which they knew in advance that they would

be absent. The employees created a tool called the "I Need a Sub Sheet" to request that a shift be covered by another employee so that the listing employee could be absent from work during that shift. If another employee wanted to work the listed shift, they could sign up for that shift, and a manager would authorize the substitution if it did not cause the employee to work overtime.

Finner explains that the "I Need a Sub Sheet" did not, in itself, constitute providing notice to management of an absence or making a request for time off work. If an employee was unable to find a substitute for a shift, the employee was expected to speak with a manager about their specific circumstances and seek approval for the absence. It was not acceptable to simply list a shift on the "I Need a Sub Sheet" and, if no other employee agreed to cover the shift, to be absent from work without first obtaining approval for the absence from management. Doing so would result in an unexcused absence for which discipline could be imposed. However, Finner had a limited exception to this policy in cases where the employee produced a doctor's note to excuse the absence.

Burkard, on the other hand, explains that the "I Need a Sub Sheet" did provide notice to management of an absence because the managers checked the sheet each day, and they would become aware of an anticipated absence by looking at the sheet.

At the time that Burkard was hired, she was approximately seven months pregnant, but her pregnancy was not readily apparent. She did not immediately disclose her pregnancy to Finner when she was interviewed, hired, and began work. Anzorena, the shift supervisor, recognized that Burkard was pregnant and the two shared pregnancy stories.

Sometime in July 2013, shortly before Burkard's labor and delivery of her baby, O'Rourke learned that Burkard was pregnant. Upset that Burkard had not informed him earlier of the pregnancy and the approaching labor and delivery, O'Rourke called Burkard around July 22, 2013,

3

and complained that he would have to cover her absences for the six weeks while she was away from work for the delivery and recovery.  Finner excused Burkard's absence related to the birth of her child and permitted her to return to work as soon as she was ready.  Burkard had her baby on July 30, 2013, and she took only two days off work.  Upon her return to work, she furnished medical documentation to Finner.

Two weeks after Burkard gave birth, on August 14, 2013, O'Rourke began disciplining Burkard under Finner's attendance policy.  Burkard was given a written warning from O'Rourke for being nineteen minutes late to work on August 13, 2013.  In September, Finner began to significantly reduce Burkard's work hours, allegedly because of poor work performance.  Burkard complained to management about her work hours being cut and not being allowed to transfer to a different store.

Anzorena, O'Rourke, and Strainis each noted Burkard's repeated tardiness and unexcused absences.  Despite verbal counseling from O'Rourke and Anzorena, and the August 14, 2013 written warning, Burkard's tardiness continued.  Additionally, Anzorena, O'Rourke, and Strainis each observed Burkard on multiple occasions wearing a gray long sleeve t-shirt under her Jimmy John's shirt, which was non-compliant with the work uniform.  Anzorena and O'Rourke allege that they provided verbal redirection to Burkard, which was witnessed by Strainis, regarding wearing unapproved clothing.  However, Burkard does not recall ever receiving warnings or counseling regarding her work uniform.

On two days in December 2013, Burkard missed work, and she did not inform management of her absence or get another employee to cover her shift.  Instead, Burkard listed the two shifts on the "I Need a Sub Sheet."  However, no employees agreed to cover her shifts.  Burkard did not discuss her need to be absent with O'Rourke, and she did not obtain his approval to be absent on

4

December 2 and 9, 2013. O'Rourke explains that Burkard did not submit a doctor's note in connection with either of these absences. Burkard, on the other hand, testified that she did submit a doctor's note in connection with the December 2, 2013 absence.

O'Rourke and Anzorena met with Burkard on December 16, 2013. O'Rourke terminated Burkard's employment with Finner, asserting that her employment was terminated because of her absences on December 2 and 9 and her repeated failure to wear a proper work uniform.

Burkard asserts that her reduction of hours and termination were not the result of tardiness, absences, or an improper work uniform. Rather, she asserts that her hours were reduced and she was terminated because of pregnancy discrimination. Burkard filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") and received a right to sue letter from the EEOC.

On April 4, 2014, Burkard filed her Complaint against Finner in this Court, alleging that Finner had violated her rights as protected by Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") (Filing No. 1). She asserted claims for sex and pregnancy discrimination and retaliation. Finner filed its Answer on May 27, 2014 (Filing No. 9), and following discovery, Finner filed its Motion for Summary Judgment on Burkard's two claims.

## II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences

in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). "However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

The Court views the designated evidence in the light most favorable to Burkard, as the non-moving party, and draws all reasonable inferences in her favor. *Bright v. CCA*, 2013 U.S. Dist. LEXIS 162264, at *8 (S.D. Ind. Nov. 14, 2013). "However, employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes." *Id.* at *8–9 (citation and quotation marks omitted).

### III. DISCUSSION

Burkard asserts claims for discrimination and retaliation based on her sex and pregnancy. Finner requests summary judgment on both claims, asserting that summary judgment is appropriate because Burkard cannot establish a *prima facie* case of discrimination or retaliation, and Finner had a legitimate, non-discriminatory reason for terminating Burkard's employment. The Court will first address the retaliation claim and then turn to the discrimination claim.

#### A. Retaliation Claim

Finner argues that summary judgment should be granted on Burkard's retaliation claim because she did not engage in protected activity because she never complained of unlawful discrimination. In its reply brief, Finner points out that Burkard did not respond to Finner's argument supporting summary judgment on the retaliation claim.

To establish a retaliation claim under the direct method of proof, a plaintiff must show that: (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, and (3) there is a causal connection between the adverse action and the protected activity. *Coleman v. Donahoe*, 667 F.3d 835, 859 (7th Cir. 2012).

Under the indirect method of proof, a plaintiff must establish a *prima facie* case of retaliation. Then the employer must provide a legitimate, non-discriminatory reason for the adverse employment action. Then the plaintiff must submit evidence that the employer's stated reason is pretextual. *Stephens v. Erickson*, 569 F.3d 779, 786–87 (7th Cir. 2009). To establish a *prima facie* case of retaliation, the plaintiff must show that: (1) she engaged in a statutorily protected activity, (2) she suffered an adverse employment action, (3) she was performing her job satisfactorily, and (4) she was treated less favorably than a similarly situated employee who did not complain of discrimination. *Id.*

Under both the direct and indirect methods of proof, the employee must show that she engaged in statutorily protected activity. Finner argues that Burkard did not engage in protected activity and, accordingly, the retaliation claim fails under either method of proof.

Finner explains that Burkard never complained to anyone at Finner of unlawful discrimination based on her sex or pregnancy. Finner points to Burkard's deposition testimony and interrogatory response to show that Burkard never complained to Finner of discrimination prohibited by Title VII. Burkard testified during her deposition that she complained about her work hours being cut and not being allowed to transfer to a different store. However, it appears from her testimony that she never connected the complaints about work hours and a store transfer to her sex, pregnancy, or maternity ([Filing No. 46-2 at 28](#)–30). When asked by interrogatory to describe the details of her complaints of discrimination, Burkard described an incident of illegal drug use of which she complained ([Filing No. 46-11 at 6](#)). However, a complaint of illegal drug use is not protected activity under Title VII. Finner also designated an affidavit from O'Rourke, who indicated that Burkard never complained of discrimination to him ([Filing No. 46-1 at 2](#)).

In her response brief in opposition to summary judgment, Burkard failed to advance any argument in support of her retaliation claim. She did not advance any legal arguments or analysis, and she did not designate evidence or assert facts to support her retaliation claim. Instead, in the section of her brief titled "Statement of Material Facts in Dispute," Burkard's sole reference to complaining of discrimination stated:

> 5. At no time prior to or during that meeting did Burkard ever refer to her pregnancy or claim that she was being discriminated against on the basis of either her gender or pregnancy.
>
> Response: Disputed: Plaintiff clearly testified that she had complained about discrimination at Finner N Finner [Burkard Depo. pp. 74–76].

8

([Filing No. 50-1 at 3](#)).  The referenced deposition testimony concerns Burkard's complaints about her work hours being cut and not being allowed to transfer to a different store.

> An employee, of course, need not use the words "pregnancy discrimination" to bring her speech within Title VII's retaliation protections.  But she has to at least say something to indicate her pregnancy is an issue.  An employee can honestly believe she is the object of discrimination, but if she never mentions it, a claim of retaliation is not implicated, for an employer cannot retaliate when it is unaware of any complaints.

*Miller v. American Family Mut. Ins. Co.*, 203 F.3d 997, 1007–08 (7th Cir. 2000) (citation omitted).  The evidence designated by Finner—Burkard's deposition testimony, her interrogatory response, and O'Rourke's affidavit—shows that Burkard never complained of discrimination that is prohibited by Title VII.  Thus, Burkard did not engage in statutorily protected activity, which is required to support a retaliation claim.  Burkard did not respond to this evidence or argument.  "Perfunctory, undeveloped arguments without discussion or citation to pertinent legal authority are waived."  *Thornton v. M7 Aerospace LP*, 796 F.3d 757, 773 (7th Cir. 2015) (quoting *Mahaffey v. Ramos*, 588 F.3d 1142, 1146 (7th Cir. 2009)).

Based on the designated evidence, the case law, and Burkard's failure to respond, the Court **GRANTS** summary judgment in favor of Finner on Burkard's claim for retaliation.

**B.      Discrimination Claim**

Burkard also asserts a claim for discrimination based on her sex and pregnancy.  Finner argues that it is entitled to summary judgment on this claim because Burkard cannot establish a *prima facie* case of discrimination, and it had a legitimate, non-discriminatory reason for its employment decisions regarding Burkard.

Title VII makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1).  "[T]he

Pregnancy Discrimination Act . . . amended Title VII to state that discrimination 'because of sex' includes discrimination 'because of or on the basis of pregnancy, childbirth, or related medical conditions.'" *Hall v. Nalco Co.*, 534 F.3d 644, 646 (7th Cir. 2008) (quoting 42 U.S.C. § 2000e(k)).

A plaintiff may show sex discrimination through a direct method or, as an alternative, indirectly through the burden-shifting mechanism established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Simpson v. Borg-Warner Auto., Inc.*, 196 F.3d 873, 876 (7th Cir. 1999) (sex discrimination). Likewise, a plaintiff asserting discrimination on the basis of pregnancy, childbirth, or related medical conditions may prove such discrimination through either the direct or indirect method. *Griffin v. Sisters of St. Francis, Inc.*, 489 F.3d 838, 844 (7th Cir. 2007).

Under the indirect method, a plaintiff must prove that: "(1) she was pregnant and her employer knew she was pregnant; (2) she was performing her duties satisfactorily; (3) she was fired; and (4) similarly situated employees not in the protected class were treated more favorably." *Id.* If the plaintiff establishes a *prima facie* case of discrimination, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. *Id.* If such a reason is given, the plaintiff can survive summary judgment only by showing that the reason is pretext for intentional discrimination. *Id.* Furthermore, "[t]he focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered. We do not sit as a superpersonnel department that reexamines an entity's business decision and reviews the propriety of the decision. Our only concern is whether the legitimate reason provided by the employer is in fact the true one." *Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) (citations omitted).

"Alternatively, the plaintiff may proceed under the 'mixed motives' or direct method, in which case the plaintiff may avoid summary judgment by producing sufficient evidence, either direct or circumstantial, to create a triable issue as to whether pregnancy was a motivating factor in her discharge." *Marshall v. American Hosp. Ass'n*, 157 F.3d 520, 525 (7th Cir. 1998). In pregnancy discrimination cases, direct evidence of discriminatory intent "generally is in the form of an admission by a supervisor or decision maker that the employee was suspended because she was pregnant." *Kennedy v. Schoenberg, Fisher & Newman*, 140 F.3d 716, 723 (7th Cir. 1998).

Considering Burkard's discrimination claim under the indirect method of proof, the Court first notes that there is no dispute regarding the first and third prongs of a *prima facie* case of discrimination: Burkard was pregnant and Finner knew she was pregnant, and she suffered an adverse employment action when she was terminated.

Finner argues that Burkard cannot establish a *prima facie* case of discrimination because she cannot show that she was performing her duties satisfactorily and that similarly situated employees outside her protected class were treated more favorably. Finner additionally argues that it had legitimate, non-discriminatory reasons for its adverse employment actions against Burkard, and those reasons are not pretextual.

### 1. Similarly situated employees outside the protected class being treated more favorably.

To support this element of a *prima facie* case of discrimination, Burkard points to three men (Edwin Figueroa, Samuel Becker, and Alex Mondabach) and one non-pregnant female (Simone), who engaged in similar policy violations and who were not fired by Finner. She designates the work attendance papers of Figueroa, Becker, and Mondabach and explains that Figueroa was tardy 68 times and absent 29 times, Becker was tardy 32 times and absent 17 times, and Mondabach was tardy 69 times and absent 7 times during the time period when Burkard was

employed by Finner. In this same time period, Burkard was tardy 40 times and absent 6 times. Burkard asserts that, even though her attendance issues were not as egregious as these three men, she was terminated while the men were not terminated or disciplined.

Regarding Simone, the non-pregnant female, Burkard designated deposition testimony wherein she testified that Simone was absent from work on December 2, 2013, listed her absence on the "I Need a Sub Sheet," did not get a substitute, and did not get approval to miss work. However, Simone still missed work that day, did not provide a doctor's note, and was not fired by Finner. Similarly, Burkard was absent from work on December 2, 2013, listed her absence on the "I Need a Sub Sheet," did not get a substitute, and did not get approval to miss work. She missed work that day, but she did provide a doctor's note.[1] Despite this, Finner used this absence as a reason for Burkard's termination.

Finner argues that these four comparator employees are not similarly situated to Burkard because they did not have the same combination of policy violations as Burkard—tardiness, attendance, and work uniform violations. Thus, there is no evidence that Figueroa, Becker, Mondabach, or Simone violated the work uniform policy. Finner asserts that the work attendance papers designated by Burkard do not indicate whether the many absences and late arrivals by the three men were excused by management, and there is no evidence that Simone's absence was unexcused.

> The similarly-situated analysis calls for a "flexible, common-sense" examination of all relevant factors. All things being equal, if an employer takes an action against one employee in a protected class but not another outside that class, one can infer discrimination. The "similarly situated" prong establishes whether all things are in fact equal. Its purpose is to eliminate other possible explanatory variables, such as differing roles, performance histories, or decision-making personnel, which helps isolate the critical independent variable — discriminatory animus.

---

[1] The Court recognizes that Finner disputes receiving a doctor's note to excuse Burkard's absence on December 2, 2013. However, Burkard designated evidence that she did provide a doctor's note, and the Court must view the evidence in the light favorable to Burkard as the non-moving party. *Zerante*, 555 F.3d at 584.

> Similarly situated employees must be "directly comparable" to the plaintiff "in all material respects," but they need not be identical in every conceivable way. We are looking for comparators, not "clones." So long as the distinctions between the plaintiff and the proposed comparators are not so significant that they render the comparison effectively useless, the similarly-situated requirement is satisfied.

*Coleman*, 667 F.3d at 846 (citations and quotation marks omitted). The Seventh Circuit further explained in *Coleman* that,

> In the usual case a plaintiff must at least show that the comparators (1) dealt with the same supervisor, (2) were subject to the same standards, and (3) engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them. This is not a "magic formula," however, and the similarly-situated inquiry should not devolve into a mechanical, "one-to-one mapping between employees."

*Id.* at 847 (citations and quotation marks omitted).

The designated evidence shows Burkard dealt with the same supervisors and was subject to the same standards as her four proposed comparator employees. Additionally, Burkard engaged in similar conduct as the comparators by arriving late to work and being absent from work. Concerning the issue of work uniform violations, the Court determines that such differentiating circumstance to distinguish Burkard from her proposed comparators would require the Court to devolve into a mechanical, one-to-one mapping between employees. The Court does not think this fact is sufficient to distinguish Burkard from her proposed comparator employees.

Reasonable inferences are drawn in favor of the non-moving party during the summary judgment stage of the proceedings. *Zerante*, 555 F.3d at 584; *Bright*, 2013 U.S. Dist. LEXIS 162264, at *8. It is reasonable to infer that of Figueroa's 68 late arrivals and 29 absences, Becker's 32 late arrivals and 17 absences, and Mondabach's 69 late arrivals and 7 absences, some of those late arrivals and absences were not excused by Finner. Importantly, if those late arrivals and absences actually were excused by Finner, Finner was in a position to designate evidence to show

that they were in fact excused. Instead of designating evidence to establish that fact, Finner left open the inference that the late arrivals and absences were not excused. Additionally, Finner did not designate any evidence showing that it disciplined any of these men for the similar policy violation for which it terminated Burkard.

The designated evidence suggests that Simone was absent from work the same day as Burkard, December 2, 2013, and engaged in the same conduct by listing her absence on the "I Need a Sub Sheet," not getting a substitute, and not reporting her absence. She did not provide a doctor's note to excuse the absence while Burkard did provide a note for her own absence. While Finner asserts that Burkard failed to designate evidence that Simone's absence was unexcused, Finner was in a position to designate evidence to show that it was in fact excused, but did not do so. Again, Finner left open the reasonable inference that Simone's absence was not excused.

At this stage of the litigation, there are questions of fact based on the designated evidence and reasonable inferences that should be answered by a jury regarding whether similarly situated employees outside the protected class were treated more favorably than Burkard.

### 2. **Performing duties satisfactorily and pretext.**

Finner points to Burkard's history of numerous, unexcused absences and late arrivals to work and her many work uniform violations to argue that she was not performing her work duties satisfactorily. Finner also offers these reasons as its legitimate, non-discriminatory reason for firing Burkard.

Burkard responds that, under facts similar to this case, courts often will consider this prong and pretext together, and her violations of the attendance and uniform policies were insufficient to motivate Finner to terminate her, and Finner's proffered reason is unworthy of credence.

Burkard's argument is based on evidence that other employees violated these same policies, but Finner did not discipline or terminate these other employees for these same violations.

Burkard asserts that she was performing satisfactorily to meet Finner's expectations because the supervisors judging her performance were the same people who she accuses of discriminating against her when they did not discipline other employees engaged in the same policy violations. Based on the flexibility of the *McDonnell Douglas* analysis, the Court agrees that the issue of pretext and meeting legitimate expectations should be considered together. Burkard has presented evidence to show that she was disciplined for policy violations that were also committed by men and a non-pregnant woman who were not disciplined. Accordingly, it makes little sense in this context to determine whether Burkard was meeting Finner's legitimate expectations. Rather, the parties' arguments are more appropriately considered in the analysis of pretext. *See Vakharia v. Swedish Covenant Hosp.*, 190 F.3d 799, 807 (7th Cir. 1999) (court can assume that the plaintiff has met the "legitimate expectations" element of the *prima facie* test where that element dovetails with the issue of pretext); *Curry v. Menard, Inc.*, 270 F.3d 473, 477–78 (7th Cir. 2001).

A plaintiff may show pretext by presenting "evidence that demonstrates that (1) the proffered reasons are factually baseless; (2) the proffered reasons were not the actual motivation for the discharge; or (3) the proffered reasons were insufficient to motivate the discharge." *Wolf v. Buss Am. Inc.*, 77 F.3d 914, 919 (7th Cir. 1996). "A showing that similarly situated employees belonging to a different [protected] group received more favorable treatment can also serve as evidence that the employer's proffered legitimate, non-discriminatory reason for the adverse job action was a pretext for [] discrimination." *Gordon v. United Airlines, Inc.*, 246 F.3d 878, 892 (7th Cir. 2001).

Burkard has put forth evidence that Finner's proffered reasons for her termination were insufficient to motivate the termination because Finner did not discipline or terminate other similarly situated employees engaged in similar attendance policy violations. Regarding the work uniform violation, Burkard designated evidence that Finner's managers saw work uniform violations on a daily basis, yet Burkard was the only employee at her Jimmy John's location that was terminated for a work uniform violation.

Though the plaintiff has the burden of proof on the issue of pretext, at this stage, it is sufficient to merely cast doubt on the veracity of the employer's stated reason. *See Stumpf v. Thomas and Skinner, Inc.*, 770 F.2d 93, 98 (7th Cir. 1985). Burkard has shown factual disputes regarding her discrimination claim based on the evidence designated by the parties and the reasonable inferences that can be drawn therefrom. Further, she has sufficiently cast doubt on the veracity of Finner's articulated reasons for her termination. Thus, summary judgment is **DENIED** on Burkard's claim for sex and pregnancy discrimination under Title VII.

## IV.   CONCLUSION

For the foregoing reasons, Defendant Finner N Finner, LLC's Motion for Summary Judgment ([Filing No. 44](#)) is **GRANTED** in part and **DENIED** in part. Burkard's claim for retaliation is dismissed with prejudice, however, her claim for sex and pregnancy discrimination remains pending for trial.

**SO ORDERED.**

Date: 5/17/2016

_____
TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

John Robert Panico
PANICO LAW LLC
jpanico@discriminationlawgroup.com

Michael Rabinowitch
WOODEN & MCLAUGHLIN LLP
mrabinowitch@woodmclaw.com

Leeann Pels Simpkins
WOODEN & MCLAUGHLIN LLP
lsimpkins@woodmclaw.com